Patrick H. O'Donnell
Virginia Bar Number: 29637
Kaufman & Canoles PC
150 West Main Street
Norfolk, Virginia 23510
Email: phodonnell@kaufcan.com
Telephone: (757) 624-3000
Facsimile: (888) 360-9092

Neil T. O'Donnell, *pro hac vice* motion to be filed
Alaska State Bar Number: 8306049
Cascadia Cross Border Law Group LLC
4300 B St., Ste. 207
Anchorage, Alaska 99503
Email: nodonnell@cascadialawalaska.com
Telephone: (907) 242-5800
Facsimile: (360) 676-5459

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| ERIC J. KADEN, <br><br> Plaintiff, <br><br> v. <br><br> MARK T. ESPER, Secretary, U.S. Department of Defense, and RYAN D. McCARTHY, Secretary of the U.S. Army, in their official capacities, <br><br> Defendants. | Case No. _____ <br><br> **CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS** |

Plaintiff Eric J. Kaden, by and through his counsel of record, Kaufman & Canoles PC and

Cascadia Cross Border Law Group LLC, hereby claims and alleges as follows:

Page 1

**JURISDICTION AND VENUE**

1.    This action challenges unconstitutional national origin discrimination imposed by the U.S. Department of Defense (DoD) and the U.S. Army on naturalized U.S. citizen soldiers who entered the U.S. armed services through the Military Accessions Vital to National Interest (MAVNI) Program, thereby delaying and damaging their careers and preventing them from fully utilizing their talents for the benefit of the national defense.

2.    This action arises under the United States Constitution.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 2201 – 2202 (the Declaratory Judgment Act); and the Constitution.  Venue in this District is authorized by 28 U.S.C. § 1391(e)(1)(C) (judicial district in which a plaintiff resides).

**PARTIES**

3.    Plaintiff ERIC J. KADEN ("KADEN") is a naturalized United States citizen who enlisted in the U.S. Army through the Military Accessions Vital to National Interest ("MAVNI") program.  He resides in the Eastern District of Virginia.

4.    Defendant MARK T. ESPER ("ESPER") is the Secretary of the U.S. Department of Defense ("DoD") and is responsible for the administration and supervision of the U.S. Armed Forces.  ESPER is sued in his official capacity only.

5.    RYAN D. McCARTHY is the Secretary of the U.S. Army ("Army") and is responsible for the administration and supervision of the Army.  McCARTHY is sued in his official capacity only.

**THE MAVNI PROGRAM**

6.    The Military Accessions Vital to National Interest (MAVNI) Program was designed to address critical shortages of personnel in the U.S. Armed Services by allowing noncitizens to enlist in the U.S. military if they were legally present in the United States, did not yet have "green cards" (lawful permanent residence), and met certain requirements.

7.    The MAVNI program was initially authorized by Secretary of Defense Robert Gates in November 2008.  Secretary Gates authorized the U.S. Armed Services to recruit two categories of MAVNI enlistees: (1) Health Care Professionals (HCPs), who were legally present noncitizens with certain U.S. medical licenses or credentials, and (2) language enlistees, who were legally present noncitizens who had demonstrated expertise in certain strategic foreign languages.  Army MAVNI enlistees were required to meet all of the usual requirements for enlistment except that they were required to score higher on the Armed Forces Qualification Test (AFQT) than other military recruits and were ineligible for any "moral" or conduct waivers.

8.    MAVNI recruits were required by their enlistment contracts to apply for naturalization as United States citizens and were advised of this requirement during the enlistment process.

9.    The naturalization process requires the noncitizen to complete USCIS Form N-400, undergo extensive Department of Homeland Security background checks (including an FBI name check), pass English and civics tests, be interviewed by a United States Citizenship and Immigration Services (USCIS) officer, and participate in a naturalization oath ceremony.

10.    The MAVNI program began recruitment in 2009.  Recruits enlisted through the MAVNI program were assured repeatedly, both orally and in writing, that they would have the same opportunities, once naturalized, as any other American citizen serving in the U. S. armed forces.  For example, the MAVNI Information Paper (September 2012) states:

> Once you enter the Army, you will have all the same opportunities afforded to you as any other Soldier in the U.S. Army.  If you are eligible and meet all the requirements, you can apply for Officer Candidate School (OCS), Green to Gold, Warrant Officer Candidate School (WOC) or any other Army school or program for which you are eligible.

11.    By the nature of the MAVNI program, a permanent and immutable characteristic of U.S. citizens who enlisted in the U.S. Army through the MAVNI program is that they are naturalized U.S. citizens who came from a foreign country.

**DOD's DISCRIMINATORY CONDUCT TOWARDS MAVNI SOLDIERS**

12.    Beginning with a memo issued on September 30, 2016 by Peter Levine, Acting Under Secretary of Defense for Personnel and Readiness, entitled "Military Accessions Vital to the National Interest Pilot Program Extension," DoD and the Army embarked on a series of discriminatory and unconstitutional practices directed against U.S. citizens who naturalized after they had enlisted through the MAVNI program.  These discriminatory and unconstitutional practices increased in severity and scope in the years following the "Levine memo."

13.    Most jobs in the military require a security clearance.  Officers must have a security clearance, so persons who are barred from getting a clearance cannot become officers. Individuals also cannot serve in many enlisted and non-commissioned officer positions without obtaining a security clearance, including almost all positions in Military Linguistics, Military Police, Military Intelligence, Signal Corps, Special Operations, Psychological Operations, the Defense Attaché System, and Civil Affairs.  Even many positions within non-sensitive branches of the Service (*i.e.*, Transportation, Quartermaster, Artillery, Infantry, etc.) require a security clearance.  For example, soldiers having access to advanced military technology, or even simply administrative access to other soldiers' Social Security numbers, must have a security clearance.

14.    Defendants, through the "Levine memo," prohibited naturalized U.S. citizen MAVNI soldiers from receiving a security clearance during their first term of enlistment (typically six to eight years).  Defendants expanded this policy on January 6, 2017 to also prohibit U.S. citizen MAVNI soldiers from applying for any position or program that required a security clearance during their first term of enlistment.  These policies were directly contrary to prior legal precedent.  *See*, *e.g.*, *Huynh v. Carlucci*, 679 F. Supp. 61, 66 – 67 (D. D.C. 1988); *Faruki v. Rogers*, 349 F. Supp. 723, 719, 733 (D. D.C. 1972).

15.    DoD allegedly withdrew the foregoing discriminatory policies after several naturalized MAVNI soldiers sued DoD and moved for a preliminary injunction to halt this

unconstitutional conduct in *Tiwari v. Mattis*, Case No. 2:17-cv-00242-TSZ (W.D. Wash.).  DoD

allegedly withdrew this policy through a June 21, 2017 memo issued by A. M. Kurta, Acting

Undersecretary of Defense for Personnel and Readiness (the "Kurta memo").

16.   DoD stated in the "Kurta memo" that "[e]ffective immediately, individuals enlisted

under the MAVNI Pilot Program who have successfully completed basic military training/boot

camp . . . and have become naturalized U.S. citizens based on their military service, may be

considered for a security clearance **on the same terms, conditions and criteria** as any other

U.S. citizen."  (Emphasis added.)  Contrary to this representation, however, Defendants in fact

continued to maintain an illegal and unconstitutional practice of prohibiting U.S. citizen MAVNI

soldiers from obtaining interim clearances.

17.   Defendants next allegedly withdrew the discriminatory and unconstitutional

practice of denying interim clearances to MAVNI soldiers in response to the *Tiwari* plaintiffs'

**second** motion for a preliminary injunction.  The Court nevertheless entered a preliminary

injunction against DoD for failure to actually implement its purported non-discrimination policy.

The Court stated:

> Despite the issuance of the Kurta memorandum, the Court entered a
> preliminary injunction, in light of evidence indicating that MAVNI soldiers
> were not in fact being treated the same as other United States citizens with
> regard to the grant of interim security clearances. . . .  The Court directed the
> DoD Secretary to consider requests for interim security clearance eligibility for
> naturalized MAVNI personnel in the same manner as for any other soldier who
> is a United States citizen.

*Tiwari v. Mattis*, 363 F. Supp. 3d 1154, 1159 n.12 (W.D. Wash. 2019).

18.   Notwithstanding the foregoing preliminary injunction, the "Kurta memo" still

retained an <u>express</u> discriminatory requirement for naturalized U.S. citizen MAVNI soldiers

seeking a security clearance, namely that they first "have successfully completed basic military

training/boot camp."  For individuals intending to become commissioned officers, Defendants

advised this requirement "includes all Basic Officer Leaders Courses."  (*See* Arendt Dec. 9/5/17,

filed at *Tiwari v. Mattis*, Dkt. 70 p. 35)  Plaintiffs in the *Tiwari* litigation challenged this

additional discriminatory requirement because it created a classic "Catch-22."  Defendants' new

policy prohibited U.S. citizen MAVNI soldiers seeking to become officers from applying for a

security clearance until they first **completed** their initial officer training course while Defendants

simultaneously prohibited officer candidates from **attending** an initial officer training course

until they first received a security clearance.

19.    In light of a motion for summary judgment filed by the *Tiwari* plaintiffs,

Defendants allegedly withdrew the foregoing additional discriminatory and unconstitutional

policy on April 27, 2018.  (*See* Smith Dec. 4/30/18, *Tiwari v. Mattis*, Dkt. 131-1 p. 96; *see also*

*Tiwari v. Mattis* Dkt. 137 p. 34 – 35).

20.    In practice, Defendants still have not withdrawn the foregoing discriminatory and

unconstitutional policies and practices.

21.    As found by the Court in *Tiwari v. Mattis*, 363 F. Supp. 3d 1154, 1165 (W.D.

Wash. 2019), Defendants have "focused on MAVNI status as a proxy for national origin."

22.    As documented by a May 2017 internal "Action Memo" prepared by Stephanie

Miller, Director of Accessions Policy for the Office of the Undersecretary of Defense for

Personnel and Readiness, Defendants have intentionally applied discriminatory policies against

naturalized U.S. citizen MAVNI soldiers despite recognizing the unconstitutionality of such

conduct.

23.    As found by the Court in *Tiwari v. Mattis*, 363 F. Supp. 3d 1154, 1166 (W.D.

Wash. 2019), DoD has been "aware of the equal protection violations that would arise if

naturalized MAVNI soldiers were treated differently from other citizens, but it nevertheless persisted in the discrimination."

24.    Defendants to this day persist in discriminatory treatment of naturalized MAVNI soldiers.

25.    Defendants' general animus towards MAVNI soldiers is further evidenced by Defendants' concerted and longstanding efforts to prevent MAVNI soldiers from receiving the opportunity to become U.S. citizens as they were expressly promised by Defendants at the time of their enlistment.  Specifically, Defendants prevailed upon the United States Citizenship and Immigration Services (USCIS) not to process naturalization applications from MAVNI soldiers contrary to USCIS's express statutory duties (including 8 U.S.C. § 1447(b), which requires that USCIS decide naturalization applications within 120 days following the naturalization interview) pending Defendants' completion of a MAVNI "Military Service Suitability Review" (MSSR) and MAVNI "Military Service Suitability Determination" (MSSD) for each MAVNI soldier. Defendants made this unlawful request, and USCIS acceded to this unlawful request, despite the fact that (1) MSSRs and MSSDs are conducted under substantially different criteria, and for different purposes, than those applicable to naturalization applications, and (2) Defendants are not even attempting to complete MSSDs for most MAVNI soldiers.

26.    In *Nio v. United States Dep't of Homeland Security*, 385 F. Supp. 3d 44, 68 (D.D.C. 2019), the Court found that USCIS's practice of failing to adjudicate MAVNI soldiers' naturalization applications (at Defendants' request) pending receipt of soldiers' MSSDs was "arbitrary and capricious" and illegal under the Administrative Procedure Act, 5 U.S.C. § 706(2).

27.    As alleged above, naturalized U.S. citizens who entered the armed forces through the MAVNI program are being treated differently from other U.S. citizens who serve in the military.  There is no rational, much less compelling, basis for such discriminatory treatment.

**PLAINTIFF'S BACKGROUND**

28.    Plaintiff ERIC J. KADEN (hereinafter "KADEN") is a United States citizen who naturalized on August 14, 2014.

29.    KADEN is a native of South Korea.  He came to the United States in August 2006 as an F-1 student.  He received a Bachelor of Arts degree in Computer Science from New York University in January 2011.  He received a Master's Degree in Computer Science from New York University in May 2013.  He began a Ph.D. program in Computer Science at Texas Tech University in August 2013.

30.    Because of his attachment to the United States and desire to earn citizenship in this country through military service, KADEN enlisted in the U.S. Army through the MAVNI program on October 16, 2013.

31.    Through a MAVNI "Information Paper" provided to him at the time of enlistment, and signed by KADEN, his Recruiter, Guidance Counselor, and Recruiting Station Commander, the Army promised KADEN that "[o]nce you enter the Army, you will have all the same opportunities afforded you as any other Soldier in the U.S. Army."

32.    KADEN shipped to Basic Combat Training ("BCT") on June 2, 2014.

33.    After successfully competing (BCT), KADEN attended Advanced Individual Training ("AIT") to become a Behavioral Health Specialist from August 20, 2014 to December 17, 2014.  KADEN was the Honor Graduate of his AIT course.

34.    Over the following four years, KADEN was deployed as an active duty soldier at multiple duty stations in the United States and overseas.

35.    During his term of service, KADEN received an Army Achievement Medal on December 15, 2014 for meritorious achievement as the Distinguished Honor Graduate for his AIT course.  He received a second Army Achievement Medal on April 29, 2016 for "exceptional meritorious achievement" at his assigned overseas military community hospital.  The award noted that "his hard work and dedication has resulted in greater team performance and patient safety throughout the organization."  KADEN received a third Army Achievement Medal on May 12, 2016.  That award recognized that his "expertise, leadership and support were vital to the overall success of the joint commission inspection" of the hospital.  On July 7, 2016, KADEN received the Army Commendation Medal as the Non-Commissioned Officer in Charge (NCOIC) of the hospital's Behavioral Health Clinic noting that his "expertise, leadership and support were vital to the overall success of the Unit's mission."  On June 8, 2018, KADEN received a second Army Commendation Medal for "meritorious service as the informational technology manager for Department of Behavioral Health."  According to the award, "[h]is exceptional leadership, selfless devotion to soldiers and unparalleled dedication to mission accomplishment were instrumental in improving teamwork, quality care and quality caring."

36.    As a soldier enlisted through the MAVNI program, KADEN was subject to a Single Scope Background Investigation ("SSBI").  This level of investigation is now called a "Tier 5" investigation.  A SSBI investigation (now Tier 5 investigation) is the investigation level required to receive a Top Secret clearance.

37.    KADEN's SSBI investigation was completed on February 26, 2014.  DoD Central Adjudication Facility ("DoD CAF") then determined his security eligibility was "FAVORABLE" on March 7, 2014.

38.    KADEN was not actually issued a security clearance by DoD CAF at the time of the 2014 "FAVORABLE" determination because he did not need a security clearance at that time and his command had accordingly not requested that he receive a security clearance.

39.    Beginning in September 2017, KADEN's command in Ft. Bragg, North Carolina, requested that KADEN actually be issued a security clearance.  The reason for the security clearance request was KADEN's expressed intention of applying to an officer-producing program.  No action was taken on this request by DoD CAF, however, prior to KADEN's completion of his term of service and discharge from the Army (with an Honorable Discharge) on June 1, 2018.

40.    After leaving the Army, KADEN obtained a job with a defense contractor.  In order to fully perform his expected duties at his new employer, KADEN needed to obtain a security clearance.  His employer sponsored KADEN for a security clearance and a new application for a security clearance (an "SF-86") was submitted on April 13, 2018.  On May 21, 2019, this investigation was closed.  The determination was once again favorable.  No security clearance, however, was issued to KADEN.

41.    On January 7, 2019 KADEN applied to become a Reserve Commissioned Officer in U.S. Army Cyber Command through the Army Cyber Direct Commission Program.  KADEN was advised of his favorable officer board results on May 7, 2019.  The only remaining requirement for his commissioning was the receipt of a security clearance.

42.     On or before February 2020, Army Cyber Command requested that DoD CAF expedite the review and issuance of KADEN's security clearance.  No action was taken on this request.

43.     On or about July 21, 2020, KADEN was advised through his Army Cyber Command human resource coordinator ("Force Integration Specialist") that DoD CAF had entered the following case note on DoD CAF's case status report system:  "Another CSR [Customer Service Representative] requesting adjudication (TS/SCI) ["Top Secret / Sensitive Compartmentalized Information].  **No action taken at this time, case is still on hold pending MAVNI policy**."  (Emphasis added.)

44.     To date, no action has been taken by Defendants on KADEN's security clearance application despite the fact that it was submitted over two years and three months ago.

45.     The lack of security clearance has created, and is continuing to constitute, a serious impediment to KADEN's career as a civilian defense contractor employee.

46.     The lack of security clearance is also preventing KADEN from accepting the Reserve Officer Commission for which he has been selected and he is in danger of permanently losing the opportunity to become a commissioned officer.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this lawsuit as a class action on behalf of himself and all other similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The named Plaintiff seeks to represent a class of all naturalized U.S. citizens who entered the U.S. Army through the MAVNI program and for which a request for adjudication of a security clearance has been made to DoD CAF but not yet finally adjudicated by DoD CAF.

48.   The members of the proposed class meet the requirements of Rule 23(a) as there are likely numerous class members, there are questions of law or fact common to the class (*i.e.*, whether it is constitutional to subject class members to discriminatory MAVNI-based security clearance policies, practices and procedures), the proposed class representative is typical of the remaining class members because they are all subject to the same challenged discriminatory MAVNI-based policies, practices and procedures; and the proposed class representative will fairly and adequately protect the interest of the class because Plaintiff's interest is identical to the other members of the class and Plaintiff is represented by competent counsel.

49.   Class certification is appropriate under Rule 23(b)(1) because prosecuting separate actions could create a risk of inconsistent or varying adjudications that would be dispositive of the interests of individuals who are not parties to this action.

50.   Class certification is appropriate under Rule 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate for the class as a whole.

51.   Class certification is appropriate under Rule 23(b)(3) because questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**CLAIM FOR DEPRIVATION OF CONSTITUTIONAL RIGHTS**

52.   Defendants' discriminatory actions against naturalized U.S. citizens who enlisted in the U.S. Army through the MAVNI program violate Plaintiff's rights of equal protection as guaranteed by the Due Process clause of the Fifth Amendment of the U.S. Constitution.

53.     Plaintiff is entitled to a declaration that Defendants' actions that discriminate against naturalized U.S. citizens who enlisted in the U.S. Army through the MAVNI program violate Plaintiff's rights of equal protection as guaranteed by the Due Process clause of the Fifth Amendment of the U.S. Constitution.

54.     Plaintiff is further entitled to preliminary and permanent injunctions prohibiting Defendants from engaging in actions that discriminate against naturalized U.S. citizens who enlisted in the U.S. Army through the MAVNI program in violation of Plaintiff's rights of equal protection as guaranteed by the Due Process clause of the Fifth Amendment of the U.S. Constitution.

WHEREFORE, Plaintiff requests the following relief:

1.      Declaratory and injunctive relief as set forth in the Complaint;

2.      An award of costs and attorney fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), and/or any other statute or rule of law that provides for an award of costs and attorney fees in this situation; and

3.      Other relief deemed equitable or applicable by the Court.

DATED this the 13th day of August, 2020.


By: /s/ Patrick H. O'Donnell
Patrick H. O'Donnell
Virginia Bar Number: 29637
Kaufman & Canoles PC
150 West Main Street
Norfolk, Virginia 23510
Email: phodonnell@kaufcan.com
Telephone:  (757) 624-3000
Facsimile:  (888) 360-9092

By: /s/ Neil T. O'Donnell
Neil T. O'Donnell, Esq.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Cascadia Cross-Border Law Group, LLC
4300 B Street, Suite 207
Anchorage, AK 99503
Tel: 907-242-5800
Email:  nodonnell@cascadialawalaska.com
Alaska Bar No. 8306049
Attorney for Plaintiff
*Pro Hac Vice* motion to be filed

18678300v1